Good morning, Your Honor. May it please the Court, John Schreiber on behalf of the appellants, the Kazenercom Too appellants, including Bekhtaev, Bekhtaev, Merminov. I am also representing cross-appellees Sorkin and Lambert on the Vanityk cross-appeal. And my point here is that based on what we've shown, what's in the second amendment complaint, and what we've argued on this appeal, is that the appellants alleged valid causes of action claims for RICO and for federal securities claims. And with those valid claims, it is abuse of discretion to dismiss without leave to amend. Well, so if you go back and take a look at the district court's last ruling, as I understand it, he dismissed the case on two different grounds. He said that he relied on 12b-6, said he failed to state a claim. Then he went over to 12e, and he said, you failed to comply with my prior order, and therefore I'm going to dismiss it. So he relied on two different bases, correct? Right. But ultimately, if you have a valid claim, that is under Rule of Civil Procedure 15, you leave to amend, so you freely give it. So what the district court said was, well, you were told, the plaintiffs were told by the D.C. court, this was a mess, they had to clean it up. They filed a first amended complaint, and it gets transferred to the district court. But the district judge, I think, in D.C. also says this first amended complaint is totally confusing and doesn't comply and whatever. He didn't rule on the merits of anything. But it comes out here to California, and so the district judge here says, you know, you already filed two complaints. I understand that, Your Honor. But what the district court also said was that this is really more a matter, I mean, a matter of organization and of not, they said in the sanctions hearing, that there may well be facts stating a valid claim. It wasn't that there was no evidence. It was that it was poorly organized. So what I'm saying is that under, for example, under the Wagner case cited in the briefs, that we've shown the kind of connectivity where you can give the heads up to the district court and to the parties. Let me just ask you. So on the 12B6 ruling, the district court said, at least with respect to the RICO claim, that the complaint did not allege an enterprise that satisfied the requirements of RICO, correct? That's what. It didn't go on down and further analyze the other elements of a RICO claim. Right. Right? Right. Now, when I read the case, when I read, I sat down and read the complaint from beginning to end. It looks like anything looks like it's more of a Rule 8 problem than a Rule 12E problem. But nonetheless, you can read the complaint, and there's a lot of unnecessary allegations and a lot of unnecessary facts, and it's not a model complaint by any means. I don't think anybody would put that in a treatise on how to allege. Right. But nonetheless, you know, the Supreme Court under Iqbal and other cases requires a little bit more, and under the Securities – Private Securities Litigation Reform Act, you've got to meet the heightened standard for security. So Rule 8 just doesn't cut it by itself nowadays like it used to in the old days. So there is a – but nonetheless, it is a kind of a disjointed complaint in some respects. Well, no, I read it, and it looked to me, under our case law, that there is sufficient allegations to show an enterprise. I agree, Your Honor. Okay. So does the complaint also satisfy the other elements of a RICO claim? Yes, it does. Just very briefly, just to rewind. Currently, it sets out the 30-plus instances of mail and wire fraud conducted over a four-plus-year period, including time period after this action was filed. So you have continued – you have met continuity. You have this whole pattern of the whole – not only of the mail and wire fraud, but you also have the money laundering and all the witness tampering, intimidation, and attempted murder issues as well. Okay. And then you also have the loss to economic interest of the contract rights. Now, so then if you move over to the second main claim that the district court addressed, which was the securities fraud claim. Yes. The 10B claim. Yes. That claim – I'm not quite sure, I mean, that the complaint satisfies both Rule 9e requirements and the Private Securities Litigation Reform Act heightened standards. So why don't you tell me what is the essence of that claim? The essence of the federal securities claims are – there are, in essence, three core areas. One, the misrepresentations by Vanatek to the CAEB and the other KEC representatives that you give us the shares in TDP, which controls the concession, and in exchange we'll give you 27 million shares of Teran, which will be 54 percent of Teran. Now, the complaint doesn't say that that was the representation. Excuse me? The complaint doesn't put it in the words that you just did. And 54 percent is in parentheses. Well, I believe actually one of the paragraphs does mention the 54 percent. Also, if you look at the number of shares given, there were 2.6-some-odd million shares given to CAEB directly, and the rest were given to KEC through TREC, the other 22, 23-some-odd million. And the misrepresentation was that the shares had actually been diluted. Is that correct? No, the misrepresentation was that they would have majority control. The damage, one damage, was dilution. The other, there was another. Well, it wasn't a damage. I mean, that was a falsity. If they represented that they would have majority control when, in fact, they had diluted the, or they did dilute. Right, the falsity is that they said one thing, they did another, done by the same person who made the arrangements with them. The second element is that based on this November 2004 e-mail, we're going to have these couple of trades on the pink sheets showing $12.50 per share. Well, when you start seeing Vanatek and having his other entities selling off shares to third parties, none of them came close to $12.50 per share. They all ranged from, say, $6.50 or $7.50 a share down to a buck and a half. So there's loss causation there. The third element is more of an insider trading issue, where Vanatek and Karabayev, in order to pay Karabayev, they cancel KDC's original shares and backdate them and reissue new shares and give them to Vanatek's and Karabayev's entities. And that was something pointed out in that memo. That was an exhibit to the amendments. Let me ask you this. So, you know, insider trading, generally, at least when I think of insider trading, it's somebody inside the corporation who has access to information that they rely upon to buy or sell securities. Right? Right. To commit a fraud. Well, to commit a fraud on the other shareholders. Right. Among others, the other shareholders. So how does that essence of insider trading really play out here? Because they are... Alleged insider trading. Okay.  Canceling out the valid shares to KDC, which is obviously something that they did not make public, and exchanging them and then reissuing shares for their own favor. They are purchasing the shares and canceling out my client's shares. My clients would obviously want to know about this. The insider trading claim, is that the heart of your... The insider trading aspects of your 10b-5 claim, is that the heart of the claim? It's one aspect. I think one... I think the other two aspects are at least as important, if not more. I mean, but... So let me ask you this. If we were to ultimately conclude that the district court erred in not giving leave to amend, how would you go back and amend the securities claim? What I would do is I would divide it into, in essence, the three types of claims that I just mentioned. One, the misrepresentations regarding control. Two, the misrepresentations regarding the value of what these shares are worth. Three would be the insider trading issues. I would divide them up along those lines. And then what I would do is I would organize them. And actually, I stated this somewhat along those lines in my reply brief at page 28, footnote 11, where you would take, assuming that you wanted to have a very long... If you were going to have a long list, a long bunch of allegations that apply to multiple claims, you would... I would say that you would only incorporate by reference those specific allegations that came to... that apply to each specific element of the claim. Misrepresentation, scienter, loss causation, purchase, sale of a security. And that's how I would do it. Are there any additional facts that you would allege? Let's see. A couple of facts I would allege, additional facts I would allege, I think I mentioned in the brief. One would be Vanity's background in the L.A. area in terms of being in the business of looking for these opportunities. And then the other would be, to clarify, the loss suffered by Bekhtaev in KDC after he was shot the second time, where his business, where KDC suffered losses of projects, apartment building projects, things like that. Okay. All right. And with that, I'm going to... Yes, why don't you reserve your time and we'll hear from the other. Thank you, Your Honor. Good morning, Honors. May it please the Court, Paul Hoffman, Green Molden Hoffman, appearing on behalf of Asia Pacific Oil and Gas, LTV, Adiljan Dzhokazhev and Amirjan Dzhokazhev. Your Honors, my clients are three of 15 third-party defendants on the amended third-party complaint. The issues are the same though, correct? Not exactly. Well, I mean, the third-party complaint basically mirrors the second amended complaint. No, it doesn't, Your Honor, because there are no RICO allegations in the amended third-party complaint. That would be the primary difference, I think. There are securities claims. That's the one federal claim in the amended third-party complaint. I think the case against my clients illustrates... But the district court judge dismissed it, essentially for the same reasons as he dismissed the second amended complaint. Yes, that's true. Failure to comply with Rule 12e, failure to state a claim under 12b-6. Correct, but there is a very big difference involving my three third-party defendants, and that is in their briefing the appellants have conceded that there is no valid securities claim, the one federal claim, against my clients. Absent a federal claim, it is not an abuse of discretion by Judge Selma to have dismissed the supplemental state law claims, there's eight of them, against my clients without prejudice, which he did. And so what I want to emphasize to this panel is that each of these parties should be looked at separately. Yes. And that my clients are entitled to have a ruling on the claims against them, considered separately and independently from anything else. And in light of the fact that they've conceded that there's no valid securities claim, federal claim, against my clients, there is this... My clients shouldn't be here. You should have just dismissed the appeal odds against my clients. And that's what I can't understand. Why am I here? The 28 U.S.C. section 1367c says very clearly that once federal claims are dismissed, then that's a clearly sufficient basis to dismiss the supplemental claims. And the court should not consider his RICO alternative claims against my clients because that wasn't raised in the district court. Wasn't alleged in the third-party complaint against your clients? It was not. It was only alleged in the second amended complaint, which is improper as against my clients because my clients are not defendants there. In the third-party complaint. I mean in the second amended complaint. That's correct. So the problem with this case, and I think that's one of the big problems with this case, is with the shotgun pleading and this puzzle pleading, it's so confusing. There's so many defendants and cross-defendant or third-party defendants that it's easy to miss these facts that there's really no sufficient allegations against probably most or all of them. So there's just no argument for why we should be here. And I'm going to keep this real short to allow counsel to argue on the 12E and the 12B6 claims. Thank you very much. All right, thank you. Good morning, Your Honors. Rick Augustini for the appellee, Anatoly Vanatek, on the dismissal appeal, and he is the appellant on the sanctions case. Sanctions, right. A couple quick points of clarification. The court dismissed the second amended complaint under Rule 12B6 and Rule 12E. That's what I said. But the reason why it dismissed the complaint under Rule 12E is because the plaintiff failed to comply with its earlier order. Let me suggest something to you. So 12E says that the district court, if there's failure to comply, can enter an appropriate order. Correct. And the order that the district court entered here was dismissal. Correct. If you're going to dismiss a case, you've got to comply with 41, 41B, Rule 41B. Okay. Where in the district court's order does he go through the 41B factors? What the court did was the court indicated that he did not. That's not my question. Where in his order did he go through the 41B factors? He did not. He did not. Why isn't that just flat-out air? Because he also dismissed the complaint with respect to 12B6. Well, that's a different standard, though. I agree. I agree. Well, in under 12E, Your Honor, you know, there are lots of cases in both this circuit and the Eleventh Circuit that talk about how dismissal of a shotgun pleading is appropriate, especially where it's here, you've got two different courts, you know, warning the plaintiffs that they need to plead appropriately. Well, you know, look, as I said, when I saw what the case was about, I sat down and read the Second Amendment complaint. And, you know, you're right. It's a bit, it's not a model complaint. I would certainly not hold it up to any lawyer and say this is the model for how you plead a RICO claim or a securities fraud claim because there's a lot of unnecessary facts. But nonetheless, you know, the Private Securities Litigation Reform Act imposes a heightened pleading standard, and Rule 9E requires particularity with the circumstances of the alleged fraud. So you just can't get away with a straight Rule 8 complaint anymore if you're going to allege these kinds of claims. Correct? Correct. All right. So obviously the person who drafted this original complaint and then the First Amendment complaint did not understand that when you're going to just tell this lengthy story and then you allege your claims, that you need to sort of pull out which are the facts that support the various claims. But nonetheless, if you sit down and read it, you can, it didn't take me long to figure out that they allege an enterprise, which the district court said they did not allege an enterprise. An enterprise, in fact, for example, under the, under our case law, under Odom, is clearly alleged in this First Amendment complaint. And it doesn't take a lot of effort to figure that out. And I disagree with Your Honor on that point because this is. Well, tell me what Odom says. Can I just. No, I want you to tell me what Odom says. Odom lists the elements for a. And what does it say about alleging an enterprise? Well, I'm only concerned about nine circuit cases, especially a case that's an en banc case. It talks specifically to the issue of enterprise. I understand, Your Honor. Now, let's forget Odom. Just tell me why it doesn't allege an enterprise. Well, the reason why. An enterprise, in fact. Is because not only in the opening brief, but also in the complaint, they alleged these people were acting for their own individual interests. They were not acting for the benefit of the enterprise. And that's one of the elements you have to have. So you can't say Mr. Vanatek is doing all of these things to take money for himself, defendant number two is doing all of these things to take money for himself, and defendant number three is doing all of these things to take money for themselves, and then turn around and say it's an enterprise and they're all acting for a common purpose. The allegations are inconsistent. Wasn't there sort of an e-mail early on by Vanatek's? I'm glad you brought that up, Your Honor. It sort of lays out, it doesn't say this is how we're going to defraud these guys. Right. But it lays out kind of a plan of operation. Well, here's the problem. And this is the problem that plagues the complaint. And going back to Your Honor's earlier comment, this isn't just a case of someone not understanding what they're supposed to do, and I'm going to tell you why. One of the allegations in the complaint is that there's an agreement, there's a written agreement that spells out the party's obligations under this stock transfer. It's not attached. So they say there's an agreement, but they don't attach it because they don't want anyone to know what's in it. And then they say here are all of our allegations about what the agreement is without actually showing it to anyone. And therein lies the problem. It's the same problem we have with this e-mail. Well, let me ask you this. When you opposed the motion, when you moved to dismiss the Second Amendment complaint, did you attach the agreement? No, because my understanding of the rules are motions to dismiss are supposed to be made based on the four corners of the document. And any documents that are referred to in the complaint. Okay. Well, with respect to the e-mail, Your Honor, there's no allegation that that e-mail pertains to this transaction that ultimately went down with Toronto Petroleum and the plaintiffs in the case. It's several months earlier, and there's nothing in it, as Your Honor indicated, that indicates any kind of intention to defraud. All it discusses is here's the general framework for how we'd like to do a merger, okay? And what we'd like to ultimately wind up with is our side controls 51 percent of the company, and the Kazakh side controls something less than 50 percent, okay? There are no allegations, either of fact or an information of belief, that ties that e-mail to any of the alleged misrepresentations that come later. Why was it necessary to expand the size of the shares, to increase the number of shares? I don't know the answer to that question, Your Honor. You know, we didn't litigate the merits of the underlying case, in part because we never got a complaint to where the claims were properly stated. And one of the things that's important to note is, you know, the appellants have never claimed that they complied with the Court's earlier order to comply with Rule 9b where appropriate. They never claimed that the Court erred when it determined that it violated Rule 12e. I don't know who this lawyer was, but obviously he was in a little bit over his head. Well, there were two lawyers, Judge. There were two lawyers. I mean, I, you know. But the question for Your Honor is whose problem is that, okay? The defendants, first of all, they were sued in D.C. with no basis. Well, if you look at the story that's told here, it certainly looks like there is a claim, a viable claim that could go forward. And I said it looks like there's a viable claim that could go forward here. Whether they could prove it is a whole other question. We're only talking about pleadings. We're not talking about proof. We're only talking about pleadings. We're only talking about allegations. And on a 12b-6, you look, you take all the facts as true. I understand. Okay. But you also have to meet the heightened claim requirements. Now, well, obviously this person, whoever these people who drafted the, these lawyers who drafted the complaint may have had some sensitivity to that. But apparently, you know, they didn't quite get how to craft a complaint to meet all these various standards. It's not easy these days. It's not easy to satisfy the Private Securities Litigation Reform Act. All you have to do is read our cases, read what the Supreme Court says, and you'll know that it's not easy to meet these demanding pleading standards. Well, my response to that is threefold. First of all, I'll go back to my earlier point, which is whose problem is that? Is that the defendant's problem who keeps having to move to dismiss complaints where, let's not forget, we can't decide this in a vacuum, Your Honor, where the court in the District of Columbia tells you this is a blunderbuss mess. You blow it off and file an amended complaint on the eve of the hearing on the motion to dismiss. The court ultimately transfers the case, tells you it's a mess. The lawyers all the while are telling you this is what you need to do to fix it. It gets transferred out to California. The lawyer is trying to meet and confer with you and tell you all the problems you have. You blow them off and make them file another motion. Then the court out here in the Central District tells you this is a mess. I'm specifically ordering you to comply with 9b, and I'm telling you these are the problems with your complaint. You blow it off. You file a second-minute complaint. Actually, the problem here really isn't 9. 9e is the old version of a demand for a bill of particulars when the plaintiff, when the defendant, the opposition side, is seeking more information. I thought that was kind of odd because this complaint has too much information. Really, it's the problem of Rule 8. I understand that, Your Honor. To plead a clean, intelligent, easy-to-read complaint that lays out the facts that support the various claims. Right. And it wouldn't take too much. I mean, I must admit, when I was reading the complaint, I had my pen and was just striking out stuff. I'm looking at facts that would support the various claims. Right. It doesn't take a whole lot. So my bottom line here, why should, you know, I hate to say this, but, you know, the client, the client is suffering for the ineptness of their lawyers. Actually, my client is suffering for the ineptness of their lawyers. That's really what's happening here. And the appellants have this view of the world, which is that no matter how many times we fail to do what we're supposed to do, we're entitled to more. Well, how many times has the complaint been dismissed? Three. Dismissed. Oh, three. Dismissed by a court order. Well, if you count. Where a court has dismissed the case for failure to state a claim. As opposed to. How many times has it been dismissed for failure to state a claim? Okay. One time for failure to state a claim. Okay. And how many times has it been dismissed for failure to comply with 12E? Failure to comply with 12E. How many times where there's a court order? One court order, violation of that order, then. Resulted in dismissal. Correct. Okay. Now, here's the thing. When you're talking, it gets back to the original point, which is, you know, three different versions of the complaint. Okay. And the reason why there haven't been more orders dismissing the complaint is because of the tactics of the appellants. On the eve of the first motion to dismiss, they jump the gun and file a first amended complaint. I thought under the rules that a party had an automatic right to file an amended one time free. You do. So why is that a tactic that sounds, you cast it in a way that sounds like they were trying to manipulate the system in some way. Well, it is. Because if you're going to file an amended complaint, what you do is you get the motion to dismiss. You look at it and you say, gee, these people have some good points. I'm going to dismiss my complaint. And I'm going to file an amended complaint. You don't oppose the motion claiming the motion to dismiss is frivolous, wait until literally a couple of days before the hearing, and without notifying anybody, just file an amended complaint. That's a tactic. That's not a responsible thing that reasonable lawyers do. As the district court in the District of Columbia mentioned, this is crazy. You're about to get a ruling on the motion to dismiss. You would have gotten all of my comments on all of the problems and whether I thought they were legitimate, but you did it for a tactic. And don't forget, this daisy chains back to filing in the District of Columbia because Attorney Lambert was the only place he was admitted to practice. So when you're looking at this dismissal, it's tempting. And the district court in the Central District of California, in my view, fell into that trap in evaluating the sanctions motion. It's tempting to look at it just in the narrow terms of, well, there's a complaint. Let's just look at the allegations of the complaint. But when you're talking about dismissal, you have to look at it in the totality of circumstances of what took place. This wasn't a case where a guy filed a complaint and the first motion to dismiss was filed and the court dismissed with prejudice. It's several chances along the way, warned by two different courts, two different sets of lawyers, and every time they thumbed their noses at everyone and just did what they wanted to do. And here's the most disconcerting thing. It wasn't just Attorney Lambert. The local council, they bring in one local council who's just a shill, doesn't know anything, will sign off on anything. Then they bring in Ms. Sorkin, and she opposes the motion to dismiss the First Amendment complaint. Signs the Second Amendment complaint and refuses to meet and confer all the way along the road, claiming that each of those pleadings is perfect and there's nothing wrong with it. But then when you file a sanctions motion, she files a declaration saying, the minute I got into the case, I knew this was a mess. I knew that Lambert's allegations were inconsistent. And I knew that the First Amendment complaint was never going to be able to be fixed. And I knew that I would never be able to take the Second Amendment complaint to trial. But I signed the stuff anyways, and I put the defendants to the expense of filing two different motions to dismiss. I put the court to the expense of ruling on two different motions to dismiss. And now I'm just going to come to the Court of Appeal, and I'm going to say, Your Honors, we didn't ask for leave to amend below. And even though there are lots of cases that say if you don't ask for it, you don't get it. But I just want leave to amend because now I want to allege a bunch of different stuff. Now you've finally gotten my attention, and I want a fourth chance to file a fourth complaint in the case. As Judge Selna indicated in his ruling, enough is enough. They had three chances. They didn't do – they didn't fix any of the problems. They didn't make any effort to fix any of the problems. And meanwhile, the defendants are spending hundreds of thousands of dollars opposing – moving to dismiss their complaints. Who actually has control of the concession these days? Turandos. Turandos. And, you know, not for the lack of – And who controls Turand today? It's just a – it's a Nevada corporation. That's not my question. I didn't ask you what state it was incorporated in. I said, Who controls Turand today? As of today, obviously as a board of directors, Mr. Vanatek is the chairman. There are, I think, five or six directors on the board. Mr. Vanatek is one of the officers. There have been outsiders brought in, specifically a man named Charles Salisbury, who is the secretary and, I believe, the treasurer. And they're moving forward to attempt to exploit the concession. And whatever happened to Bekhtaev and Bekhtay? Are they sort of now – are they gone? Are they out of the picture? No. No, they keep filing lawsuits. Well, they're not involved in the corporation, are they? They're not involved in the day-to-day operations of the corporation. They're out. They're out. They're gone. They sued the Kazakh government in D.C., Mr. Lambert. What did they get out of all of this? What did they get out of all of it? Did they make any money? I think they got some money. And whatever stock they have in the entity is the stock they have in the entity. In Kazakhstan? And I believe it's in Turand. And that actually – you actually – I know I'm out of time. There's one final point I wanted to raise. And it infects both the complaint and the sanctions request. With the possible exception of Kazantarkhan, none of the appellants have standing in the case. None. One of the appellants claims it's a film company that was going to produce a documentary. The individuals are claimed to be employees or directors of various entities. In order to state a stock fraud claim, you have to claim that you purchased or sold stock. Okay? And this is just one of the many examples of why, in my view, Judge Selnick got so exasperated at what was going on. And I didn't get any time to talk about the sanctions motion, but that's been pretty well briefed. So let me see if – I just want to make sure I did not answer any of your questions here. That's fine. Thank you. Oh, can I make one final point? You're over your time. Thank you. Your Honor, very briefly, my clients did, at the hearing on the motion to dismiss, did seek leave to amend. Second thing is – oh, by the way, that's the August 10th, 2009, reported transcript, page 11, lines 7 through 25. KDC also sought leave to amend in its opposition to Vanity's motion to dismiss this SBA second amendment complaint on other grounds, based on Vanity's failure to cooperate in discovery. That's a supplemental exception of record, page 339, line 18, through page 340, line 10. Vanityk makes mention about the meet-and-confer, about blowing off – about KDC's counsel blowing off the meet-and-confer. Vanityk's counsel's questions to KDC's counsel in the meet-and-confer about amending the second amendment complaint and the first amendment complaint had to do with addressing substantive shortcomings Vanityk received in the first amendment complaint, not that Vanityk could not understand what he was being sued for. If you look at the supplemental excerpts of record, page 202 through 214, and the latter is what Rule 12e motions are for, KDC's counsel provided a table with side-by-side responses to each of Vanityk's comments or questions. This is the pleading stage. This is not – Well, there's no question that this has been a mess. I will – And you agree. And so what's going to change about it? I mean, is this, again, just going to be churning, causing the defendants to spend more and more money so they might throw a little money your client's way? Oh, no. What I'm trying to do is, in my brief, is shine a light as to how to show valid claims here and how to go about doing it so that you can actually get to the merits of the claim. That's what my – I know that that's what I want to do to serve my clients. And with that, I'll submit it. Okay. Thank you. We appreciate your arguments, counsel. Thank you. All right. The next case on the calendar for oral arguments is Travelers' Property Casualty v. Safeco Insurance of Illinois.
judges: Jones, Pregerson, Paez